IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **3385 NEWMARK DRIVE LLC**<br>Miamisburg, OH 45342<br><br>**Plaintiff,**<br><br>v.<br><br>**PNC BANK, NATIONAL ASSOCIATION,**<br>c/o Registered Agent<br>Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH 43221<br><br>**Defendant.** | Case No. _____<br><br>Judge _____<br><br>**COMPLAINT** |

COMES NOW Plaintiff 3385 Newmark Drive LLC ("Newmark," "Landlord," or "Plaintiff") and for its Complaint against Defendant PNC Bank, National Association ("PNC Bank," "Tenant," or "Defendant") states as follows:

### NATURE OF THE ACTION

1. This is a breach of contract action arising out of PNC Bank's failure to perform its rent (Lease § 2.2), maintenance (*id.* § 8), and surrender (*id.* § 23) obligations under a commercial lease agreement.

### PARTIES, JURISDICTION & VENUE

2. Newmark is a limited liability company organized under the laws of the State of Ohio. Newmark's members are citizens of the State of New York. Thus, for diversity jurisdiction purposes, Newmark is a citizen of the State of New York.

3. Defendant, PNC Bank, National Association, is a federally chartered national banking association. PNC Bank's principal office, as set forth in its articles of

1

association, is in Pennsylvania. Thus, for diversity jurisdiction purposes, PNC Bank is a citizen of the State of Pennsylvania.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendant are citizens of different States and the amount in controversy greatly exceeds seventy-five thousand dollars ($75,000.00).

5. PNC Bank is subject to general personal jurisdiction in this Court because it is registered to do business in Ohio, PNC maintains offices in Ohio, and PNC derives significant revenue from Ohio, among other things. PNC Bank is subject to specific personal jurisdiction in this Court because it is a party to a lease agreement concerning commercial real estate in Ohio from which this action arises, among other things.

6. PNC Bank may be served by delivering a summons and copy of this Complaint to its registered agent, Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, Ohio 43221.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because the real property at issue in this action is located in this District, and PNC Bank has offices in this District.

## FACTUAL BACKGROUND

### *The Property*

8. Newmark owns real property located at 3385 Newmark Drive, Miamisburg, Ohio 45342 (the "Real Estate").

9. Newmark also owns the improvements on the Property, including but not limited to a large building, parking spaces, drives, and appurtenant improvements (the "Building"). The Real Estate and the Building are sometimes collectively referred to herein as the "Property."

*The Lease and Amendments*

10. On or about May 24, 2004, Newmark Holdings II Ltd., as landlord, and National City Mortgage Co., as tenant, entered into a lease agreement concerning the Property. A true and correct copy of the original lease agreement is attached hereto and is incorporated by reference as *Exhibit A*.

11. On or about August 5, 2004, Newmark Holdings II Ltd., as landlord, and National City Mortgage Co., as tenant, entered into the first amendment to the lease agreement concerning the Property. A true and correct copy of the first amendment to the lease agreement is attached hereto and is incorporated by reference as *Exhibit B*.

12. On or about October 1, 2007, Newmark Holdings II Ltd., as landlord, and National City Mortgage Co., as tenant, entered into the second amendment to the lease agreement concerning the Property. A true and correct copy of the second amendment to the lease agreement is attached hereto and is incorporated by reference as *Exhibit C*.

13. On or about June 19, 2009, Newmark Holdings II Ltd., as landlord, and National City Mortgage Co., as tenant, entered into the third amendment to the lease agreement concerning the Property. A true and correct copy of the third amendment to the lease agreement is attached hereto and is incorporated by reference as *Exhibit D*.

14. On or about December 27, 2016, Snyder-Miamisburg LLC, as landlord and successor-in-interest to Newmark Holdings II Ltd., and PNC Bank, National Association, as tenant and successor-in-interest to National City Bank, entered into the fourth amendment to the lease agreement concerning the Property. A true and correct copy of the fourth amendment to the lease agreement is attached hereto and is incorporated by reference as *Exhibit E*. The original lease agreement, together with its amendments, is

sometimes referred to herein as the "Lease."

15. Newmark became the successor-in-interest to Snyder-Miamisburg LLC in or around 2018, and therefore Newmark is the current Landlord as defined in the Lease. PNC Bank became the successor-in-interest to National City Bank in or around 2008, and therefore PNC Bank is the current Tenant as defined in the Lease.

16. The Lease expired by its terms on September 30, 2022, and PNC Bank has vacated the Property.

### *PNC Bank's Failure to Perform Rent Obligations Under Section 2.2 of the Lease*

17. Section 2.2 of the Lease calls for an increase to the base rent for each year during the term of the Lease. The Lease provides:

> 2.2. <u>Adjustment to Base Rent</u>. The Base Rent shall be adjusted annually at the conclusion of each Lease Year in accordance with changes in the Consumer Price Index for All Urban Consumers (CPI&U) for U.S. City Average as promulgated by the Bureau of Labor Statistics of the United States Department of Labor, using the years 1982-84 as a base of 100.
>
> For each year during the Term, Base Rent shall increase by a percentage equal to the percentage by which the CPI&U increases during the period beginning with the first month of the previous Lease Year, and ending on the first month of the current Lease Year. For example, if the CPI&U is 190 in the first month of the first Lease Year and CPI&U is 195 in the first month of the second Lease Year, then Base Rent shall increase by 2.6% for the second Lease Year.
>
> Landlord and Tenant acknowledge the CPI&U figures may not be available immediately and agree that adjustment to Base Rent shall be made as practicable. Tenant shall pay increases in Base Rent effective upon the adjustment upon billing for same by Landlord. In the event CPI&U is no longer reported, Landlord and Tenant shall in good faith cooperate to select another index on which to base Base Rent increases hereunder.

This is known as the "CPI Increase Clause."

18. The CPI Increase Clause required PNC Bank to pay increased base rent to the Landlord, Newmark, in a percentage calculated using the Consumer Price Index for All Urban Consumers (CPI&U) every year during the term of the Lease. The CPI Increase Clause contained in the original lease agreement was not altered, modified, or amended by any subsequent amendment to the Lease.

19. Despite its obligations under the CPI Increase Clause, PNC Bank has failed to pay base rent increases to Newmark for five years, between October 1, 2017, and September 30, 2022. PNC Bank's failure constitutes a breach of the Lease.

20. As a direct and proximate result of PNC Bank's failure to perform its obligations under the CPI Increase Clause, Newmark has suffered substantial damages in an amount to be determined at trial.

### *PNC Bank's Failure to Perform Repair, Replacement, and Maintenance Obligations Under Section 8.2 of the Lease*

21. The Lease imposes certain repair, restoration, and maintenance obligations on PNC Bank. Section 8.2 of the Lease, as amended via the second amendment, provides:

> 8.2. <u>Tenant's Repairs</u>. Subject to the obligations of Landlord under Section 8.1, Tenant, at its expense, shall perform all repairs and maintenance and make all replacement (sic) as are necessary to keep in good order, condition and repair, all portions of the interior of the Building, including without limitation interior walls, floor coverings, carpeting, finished ceilings, light fixtures, doors and entranceways, glass, windows, and all plumbing, sewer, electrical and sprinkler systems and all heating and air conditioning equipment including routine maintenance, repair and replacement, ordinary wear and tear and damage by fire or other casualty excepted. Tenant shall also cause to be performed on a regular basis pursuant to a service contract with a reputable heating ventilating and air conditioning contractor ordinary

5

day to day and preventative maintenance of the heating and air conditioning equipment used for the general heating and cooling of the Building. In addition, Tenant at its expense shall repair, replace or restore all damage to the Building or any part thereof that is based by the negligent acts or omissions of Tenant or its agents, or employees or by a breach by Tenant of its obligations under this Lease, except as otherwise provided in Section 6 hereof.

Additionally, Tenant shall undertake the following responsibilities at Tenant's expense: maintenance of the lawn and landscaping surrounding the Leased Premises in good and sightly condition; snow and ice removal from walkways and driveways surrounding the Leased Premises; service and repair of all lights serving the parking lot; maintenance of all fire sprinklers and back flow testing; and janitorial services and all trash removal. Provided however, if Tenant elects not to undertake such responsibilities, or if Tenant fails to undertake such responsibilities after thirty (30) days notices from Landlord, then Landlord may undertake such responsibilities and same shall be included within Operating Expenses payable by Tenant.

22. PNC has failed to perform its repair, replacement, and maintenance obligations under Section 8.2 of the Lease.

23. Despite its obligation to "keep in good order, condition and repair, all portions of the interior of the Building," extraordinary damage and defects have pervaded the interior, inconsistent with common legal and lay notions of "good order, condition and repair." For example, carpeting in numerous areas of the Building has become worn and soiled beyond restoration, the walls have suffered assorted damage from various impacts and water damage, suspended ceilings display pervasive water stains and damage in numerous areas, and windows and blinds have been damaged, among other things.

24. In addition, despite its clear obligation to perform "replacement" and "day to day and preventative maintenance" of the Building's HVAC system, the Building's rooftop HVAC units are at least over three years beyond their life expectancy and are

6

exhibiting signs of imminent failure. Rusting fasteners on the HVAC units' housing and chassis structure are indicative of imminent failure which would render the HVAC units inoperable and unrepairable at the time of failure.

25. As a direct and proximate result of PNC Bank's failure to perform its obligations under Section 8.2 of the Lease, Newmark has suffered substantial damages in an amount to be determined at trial.

### *PNC Bank's Failure to Perform Repair, Replacement, and Maintenance Obligations Under Section 8.1 of the Lease*

26. The Lease imposes certain repair and maintenance obligations on Newmark. Section 8.1 of the Lease, as amended via the second amendment, provides:

> 8.1. <u>Landlord's Repairs</u>. Landlord, at its expense subject to reimbursement for those matters set forth in Section 9.1, shall perform all repairs and maintenance and make all replacements as are necessary to keep in good order, condition, and repair (i) the roof and all structural elements and portions of the Leased Premises and Building, including without limitation, walls and floors and foundation; (ii) all exterior elements and portions of the Building, except for those matters which are specifically set forth as Tenant's responsibilities; and (iii) parking areas, drives, loading docks and pads located on or within the Leased Premises or building, except for Tenant's responsibilities for parking lot lighting as set forth herein, and subject however in each case to ordinary wear and tear and damage by fire or other casualty. Tenant shall reimburse Landlord for its proportionate share of Landlord's repairs, replacement and maintenance costs and other services in accordance with (and subject to the limitations set forth in) Section 9 below.

27. Although Sections 8.1 of the Lease outlines Newmark's obligation to perform certain repairs, replacements, and maintenance of the Property, the parties' conduct during the term of the Lease establishes a course of dealing that has modified Section 8.1 of the Lease. Under that course of conduct, PNC Bank assumed Newmark's

7

obligations and responsibilities for performing repairs, replacements, and maintenance to the exterior of the Building under Section 8.1.

28. For several years prior to the expiration of the Lease, PNC Bank routinely performed the Landlord's repair, replacement, and maintenance obligations under Section 8.1 of the Lease. PNC Bank's property managers, including Lori Gatland and Amber Apple, repeatedly facilitated the performance of external repairs, replacements, and maintenance at the Property by engaging their preferred contractors to perform the work. In fact, PNC Bank often undertook such efforts before consulting with and without the permission of Newmark.

29. In 2020 and 2021, PNC Bank on numerous occasions engaged its corporate vendor contractor, Burns and Scalo Roof Asset Management, to perform repairs, replacements, and maintenance of the Building's roof, an obligation of Newmark under Section 8.1 of the Lease. PNC Bank also engaged a contractor to perform repairs to the parking lot of the Building, which is also an obligation of Newmark under Section 8.1 of the Lease. PNC Bank would facilitate performance of work under Section 8.1, then forward the invoices to Newmark for payment. Newmark would pay the invoices then seek reimbursement from PNC Bank pursuant to Section 9 of the Lease. This course of dealing between the parties was well-established in the several years prior to the expiration of the Lease.

30. Moreover, the establishment of a course of dealing modifying the parties' obligations in Section 8 of the Lease is supported by the fact that, by virtue of Section 9 of the Lease, PNC Bank was ultimately responsible for paying the costs of repairs, replacements, and maintenance made pursuant to Section 8.1 of the Lease. Section 9 of

the Lease requires PNC Bank to reimburse Newmark for "Operating Expenses." Section 9.1 of the Lease, as amended via the second amendment, defines "Operating Expenses," in relevant part:

> 9.1. <u>Definitions</u>. As used herein "Operating Expenses" shall mean and include … (iii) ***the cost of maintenance, repairs and replacements of the items described in clause 8.1***; (iv) the roof and parking areas, including without limitation maintenance of the parking lot such as sealing and striping; (v) any assessment or other charges levied against or payable by Landlord in respect to the Property for maintenance and operating of surface water drainage facilities now or thereafter serving the Leased Premises … (vii) all other expenses, costs and disbursements of every kind and nature which Landlord shall pay or become obligated to pay in respect to or in connection with the operation and maintenance of the Building and Property, and which are usually considered "operating expenses" with respect to first class office buildings. […]

(emphasis added).

31. Despite having assumed Newmark's obligations under Section 8.1 of the Lease, PNC Bank, in the months preceding the expiration of the Lease, suddenly ceased performance of external repairs, replacements, and maintenance under Section 8.1 and quickly blamed Newmark for failing to perform under Section 8.1.

32. PNC Bank's finger pointing belies reality and ignores its course of dealing. In the years preceding the expiration of the Lease, PNC Bank assumed all obligations and responsibilities of Newmark under Section 8.1 by performing repairs, replacements, and maintenance to the roof and parking lot, among other things. Notably, no provision of the Lease prevents Section 8.1 from being modified by the parties' course of dealing.

33. Despite having assumed the obligations of Newmark arising under Section 8.1 of the Lease to "perform all repairs and maintenance and make all replacements as necessary" to keep the roof, all exterior elements of the building, and parking areas, drives,

9

loading docks and pads "in good order, condition and repair," extraordinary damage and defects have pervaded the exterior of the Building, inconsistent with common legal and lay notions of "good order, condition and repair." For example, the Building has suffered severe damage to the parking lot, including numerous potholes and extensive cracking, deteriorating concrete, and faded and obscured parking lot lines and handicap parking lot lines; severely deteriorating brick, including extensive spalling and lintel damage; and damage to a loading dock trailer seal, among other things.

34. As a direct and proximate result of PNC Bank's failure to perform obligations it assumed under Section 8.1 of the Lease, Newmark has suffered substantial damages in an amount to be determined at trial.

### *PNC Bank's Failure to Perform Surrender Obligations Under Section 23 of the Lease*

35. Section 23 of the Lease provides that Tenant shall, upon its expiration, "surrender to Landlord the Leased Premises in good condition and repair, ordinary wear and tear, action by the elements, fire, other casualty, condemnation or appropriation excepted." Although the Lease expired on September 30, 2022, PNC Bank failed to surrender the Property in good condition and repair.

36. On the day of surrender, extraordinary interior and exterior damage and defects plagued the Property, inconsistent with common legal and lay notions of "good condition and repair." The damage and defects present on the day of surrender include, but are not limited to, those previously alleged in this Complaint.

37. As a direct and proximate result of PNC Bank's failure to perform its surrender obligations under Section 23 of the Lease, Newmark has suffered substantial damages in an amount to be determined at trial.

## CAUSES OF ACTION

### COUNT 1—Breach of Contract

38. The preceding paragraphs, including any headings, are hereby incorporated by reference as if fully realleged in this paragraph.

39. The Lease, together with its amendments, constitutes an enforceable contract between Newmark and PNC Bank.

40. Newmark has performed all its obligations under the Lease.

41. PNC Bank has failed to perform its obligations under the Lease, as previously alleged in this Complaint.

42. As a direct and proximate result of PNC Bank's failure to perform its obligations, Newmark has suffered substantial damages in great excess of seventy-five thousand dollars ($75,000.00).

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, 3385 Newmark Drive, LLC, respectfully prays for judgment against Defendant, PNC Bank, National Association, as follows:

(a) That judgment be entered against PNC Bank, for substantial compensatory damages in an amount to be determined at trial;

(b) That judgment be entered against PNC Bank, for substantial consequential and incidental damages in an amount to be determined at trial;

(c) That Newmark recover pre- and post-judgment interest;

(d) That all costs of this action be taxed to PNC Bank;

(e) That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

Respectfully submitted,

*/s/ Brian F. Leurck*
Brian F. Leurck (0068739)
THOMAS H. BERGMAN & ASSOC., LLC
4695 Lake Forest Drive, Suite 200
Cincinnati, Ohio 45242
Phone: (513) 563-0906
Fax: (513) 272-1174
bleurck@thbergman.com

*Trial Attorney for Plaintiff,*
*3385 Newmark Drive, LLC*