UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

3385 Newmark Drive, LLC,

       Plaintiff,                                                Case No.  1:22cv671

       v.                                                  Judge Michael R. Barrett

PNC Bank, National Association,

       Defendant

## OPINION & ORDER

This matter is before the Court upon Defendant's Motion to Dismiss.  (Doc. 13). Plaintiff filed a Response in Opposition (Doc. 14); and Defendant filed a Reply (15).

**I.      BACKGROUND**

Plaintiff, 3385 Newmark Drive, LLC ("Newmark"), owns real property located at 3385 Newmark Drive, Miamisburg, Ohio. (Doc. 12 at 3). Defendant, PNC Bank, National Association ("PNC"), is the former lessee of the property. (Doc. 12 at 4). The lease for the property went into effect on May 24, 2004, between the predecessors in interest for both Newmark and PNC. (Doc. 12 at 3; Doc. 12-1). The lease was properly amended four times before expiring on September 30, 2022. (Doc. 12 at 4; Doc. 12-2, 12-3, 12-4, 12-5).

The lease and its amendments create five obligations which are at issue in this litigation. First, Section 2.2 of the lease calls for the "Base Rent" to be adjusted yearly with the Consumer Price Index for All Urban Consumers ("CPI&U"). (Doc. 12 at 5). Newmark alleges that PNC failed to pay these increases "between October 1, 2017, and September 30, 2022." (Doc. 12 at 5-6).

The second obligation at issue is the tenant's obligation to repair interior portions of the property. (Doc. 12 at 6). Under Section 8.2 of the lease, PNC was obligated to keep the interior in good order, condition, and repair except for "ordinary wear and tear." (Doc. 12 at 6). Newmark alleges at the time that the property was turned over there was substantial damage beyond ordinary wear and tear, including water damage, damaged windows, damage to the carpet, holes, and punctures in the walls, and portions of the walls had been painted with mismatched paint. (Doc. 12 at 7-8).

The third obligation is also found in Section 8.2 of the lease and requires the tenant to regularly perform preventative maintenance on the heating ventilation and air conditioning ("HVAC") equipment. (Doc. 12 at 6). Newmark alleges at the time the property was turned over, there were multiple issues with the HVAC system, including rusting fasteners and a failing motor. (Doc 12. at 8-9). Newmark asserts that these defects show that routine maintenance was not performed; and the HVAC equipment was three years beyond its life expectancy. (Doc. 12 at 8-9).

The fourth obligation is found in Section 8.1 of the lease, which requires the landlord to keep in good condition and repair the exterior portions of the property. (Doc. 12 at 9). Newmark alleges that through a course of dealing, PNC and Newmark modified this obligation, and PNC assumed Newmark's obligations for maintaining the exterior of the building. (Doc. 12 at 11). Newmark asserts that on numerous occasions PNC directly contacted its preferred vendors to perform work on the exterior of the building without contacting Newmark; PNC would forward the invoices from the vendors to Newmark; Newmark would then pay the invoices and then seek reimbursement from PNC. (Doc. 12 at 10). Newmark asserts that despite the modification, PNC failed to fix damage to the

2

parking lot, exterior brick, and damage to the loading dock seal. (Doc. 12 at 12). PNC responds that the non-waiver clause in Section 20 of the lease bars such a change to the terms of the lease. (Doc. 13 at 15).

The fifth and final obligation is in Section 23 of the lease, which requires PNC to surrender the property in good condition and repair subject to ordinary wear and tear. (Doc. 12 at 12). Newmark alleges that the surrender obligation was breached by PNC when it turned over the property with all the previously discussed defects. (Doc. 12 at 13).

PNC moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) based on the failure to state a claim.

## II. ANALYSIS

### A. Standard of review

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, a Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

B. **Breach of contract**

The parties agree that Ohio law applies. "Under Ohio law, contract interpretation is a matter of law when a contract's terms are clear and unambiguous." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Long Beach Ass'n, Inc. v. Jones*, 82 Ohio St.3d 574, 697 N.E.2d 208, 209-210 (1998)). "Contractual language is ambiguous 'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003)) (additional citations omitted). "'[C]ourts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.'" *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 953 N.E.2d 285, 292 (Ohio 2011)). Additionally, courts should "look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Id.*

1. **Unpaid rent**

Newmark alleges that PNC owes unpaid back rent for the final five years of the lease because PNC did not pay an adjusted rent amount according to Section 2.2 of the lease, which provides:

> 2.2  Adjustment to Base Rent. The Base Rent shall be adjusted annually at the conclusion of each Lease Year in accordance with changes in the Consumer Price Index for All Urban Consumers (CPI&U) for U.S. City Average as promulgated by the Bureau of Labor Statistics of the United States Department of Labor, using the years 1982-84 as a base of 100.

4

(Doc 12-1).

In its Motion to Dismiss, PNC asserts that Newmark failed to plead a plausible claim for relief for two reasons. First, PNC asserts that in the Fourth Amendment to the lease (Doc. 12-5), the parties abrogated Section 2.2 of the lease, including the relevant portion that adjusted the Base Rent yearly, in favor of a flat-fee arrangement. Second, PNC asserts that even if Section 2.2 of the lease was not abrogated by the Fourth Amendment to the lease, Section 2.2 is expressly conditioned upon Newmark's billing PNC for the adjusted amount. PNC explains that Newmark has not alleged that it billed PNC for the adjusted amount.

Because there are at least two reasonable interpretations of the rental scheme described in the Fourth Amendment to the lease, this issue cannot be decided as a matter of law. *See Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Long Beach Ass'n, Inc. v. Jones*, 82 Ohio St.3d 574, 697 N.E.2d 208, 209-210 (Ohio 1998)).

The Fourth Amendment provides in relevant part:

> 3. Commencing on October 1, 2017, the Base Rent shall be as follows:
>
> | Period | Annual Base Rent | Monthly Base Rent |
> |---|---|---|
> | October 1, 2017 – September 30, 2022 | $704,806.20 | $58,733.85 |

(Doc. 12-5). The terms of the Fourth Amendment do not clearly and unambiguously abrogate the original rental scheme, which provided in Section 2.1 of the lease:

> Tenant shall pay Landlord as annual base rent for the Leased Premises (the "Base Rent") during the term of this Lease, the sum of Nine and 25/100 Dollars ($9.25) per square foot annually, payable in equal monthly installments, Such payments shall be calculated based on the square footage of the Leased Premises as determined in accordance with Section A thereof, The Base Rent is subject to adjustment as provided in Section 2.2.

5

(Doc. 12-1).  While the Fourth Amendment does set out a monthly lump sum rental amount as the new Base Rent, it remains ambiguous whether that Base Rent amount was to continue to be adjusted per Section 2.2 of the original lease.  PNC's theory that the amendment sets one rental amount to be charged for the entire term is a reasonable interpretation, which is supported by Newmark's failure to bill for the adjustment.

However, Newmark asserts a conflicting, yet reasonable, interpretation of the same amendment.  Paragraph 1 of the Fourth Amendment also states: "For the purposes of this Fourth Amendment, capitalized terms shall have the meanings ascribed to them in the Lease unless otherwise defined herein." (Doc. 12 at 56).  As shown above, the table in Paragraph 3 sets forth the Base Rent commencing on October 1, 2017, and does not redefine "Base Rent." (Id.)  Base Rent as a capitalized term therefore must retain the definition ascribed to it in the original lease. Since "Base Rent" in the original lease described the pre-adjusted amount, it is a reasonable interpretation that the lump sum "Base Rent" described in the Fourth Amendment is also subject to a yearly adjustment.

To interpret the Fourth Amendment as abrogating the yearly adjustment would render Section 2.2 of the original lease meaningless, without express language in the Fourth Amendment doing so. Under Ohio law, as a matter of contractual interpretation, a contract must be construed in its entirety and in a manner that does not leave any phrase meaningless or surplusage. *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 363 (6th Cir. 2014) (citing *Local Mktg. Corp. v. Prudential Ins. Co.*, 159 Ohio App. 3d 410, 824 N.E.2d 122, 125 (Ohio Ct. App. 2004)).

Nevertheless, PNC argues that the unpaid rent claim should be dismissed for a failure to meet a condition precedent. The third paragraph of Section 2.2 provides:

6

"Landlord and Tenant acknowledge the CPI&U figures may not be available immediately and agree that adjustment to Base Rent shall be made as practicable. Tenant shall pay increases in Base Rent effective upon the adjustment upon billing for same by Landlord." (Doc. 12 at 18). This clause was never clearly and unambiguously modified, waived, or amended by any of the four amendments entered into by the parties or their predecessors-in-interest. (Doc. 12 at 44-60).[1] In addition, in its First Amended Complaint Newmark has not plead that it billed for the adjusted rent amounts.

As the Sixth Circuit has explained:

> Ohio law defines a condition precedent as "one that is to be performed before the agreement becomes effective. It calls for the happening of some event, or the performance of some act, ... before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 119 N.E. 132, 135 (1917); *see also Ohio Nat'l Life Assurance Corp. v. Satterfield*, 194 Ohio App.3d 405, 956 N.E.2d 866, 870 (2011) ("A condition precedent is an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." (internal quotation marks omitted)).

---

[1] However, as the Supreme Court of Ohio has explained:

> Parties may implicitly modify an agreement by their actions. *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 685, 2006-Ohio-3492, 856 N.E.2d 1008. "'A continued, different, "course of performance" between parties manifests a modification of the original agreement.'" *Id.* at ¶ 29, quoting *Schmidt v. Texas Meridian Resources* (Dec. 30, 1994), Washington App. No. 94CA12, 1994 WL 728059. Finally, "'the practical construction made by the parties may be considered by the court as an aid to its construction when the contract is ambiguous, uncertain, doubtful, or where the words thereof are susceptible to more than one meaning, or when a dispute has arisen between the parties after a period of operation under the contract.'" (Emphasis sic.) *Consol. Mgt., Inc. v. Handee Marts, Inc.* (1996), 109 Ohio App.3d 185, 191, 671 N.E.2d 1304, quoting 18 Ohio Jurisprudence 3d (1980) 46, Contracts, Section 160; *see also Natl. City Bank of Cleveland v. Citizens Bldg. Co. of Cleveland* (1947), 48 Ohio Law Abs. 325, 335, 74 N.E.2d 273 ("Where a dispute arises relating to an agreement under which the parties have been operating for some considerable period of time, the conduct of the parties may be examined in order to determine the construction which they themselves have placed upon the contract * * * ").

*St. Marys v. Auglaize Cty. Bd. of Commrs.*, 115 Ohio St. 3d 387, 393, 875 N.E.2d 561, 568 (Ohio 2007).

7

*Ramsey v. Penn Mut. Life Ins. Co.*, 787 F.3d 813, 822 (6th Cir. 2015). Because the adjustment of the Base Rent was effective upon billing by Newmark, the Court finds that the billing for the adjustment was a condition precedent for the payment of the adjusted Base Rent by PNC. Because Newmark did not bill for the adjustment, PNC was not obligated to pay the adjusted amount between October 1, 2017 and September 30, 2022.

Therefore, PNC's Motion to Dismiss is GRANTED to the extent that Newmark claims it is entitled to unpaid rent under the lease.

### 2. **Wear and tear**

Newmark alleges two separate claims based on wear-and-tear damage to the property. First, Newmark claims that PNC breached its obligations to repair the interior portions of the property under Section 8.2 of the lease. Second, Newmark claims that PNC breached its surrender obligations to turn the property over in good condition and repair in Section 23 of the lease. These two claims can be addressed together because they turn on the same issues: whether the damage alleged is considered ordinary wear and tear as a matter of law; and whether the Waiver of Subrogation Clause in Section 6 of the lease prevents Newmark from asserting damages resulting from this claim.

The requirement in a lease that the tenant keep and return the property in good condition and repair excepting ordinary wear and tear is not novel. Under Ohio law, "[t]he usual and ordinary meaning ascribed to the phrase 'wear and tear' is that deterioration of condition or depreciation in value attributable to normal and reasonable use of an object. What is normal and reasonable use depends upon the service for which the object is intended." *Ohio Environmental Development Ltd. Partnership v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, 970 (N.D. Ohio 2007). The ordinary wear and tear exception does

not apply to situations where the tenant deferred maintenance and the property was damaged as a result. *Id*. at 970-73. Nevertheless, the determination of whether damage to a leased property is "ordinary wear and tear" or something more is a question of fact, and not suitable for a motion to dismiss. *See Brant v. Benedict Enters., Inc*., Nos. C-890196, C-890216, 1990 WL 103750, at *6, at *15 (Ohio Ct. App. July 25, 1990); *see also Atlas Oil Co. v. Extreme Petro. Servs. Co.*, No. 20-cv-10877, 2022 WL 1431047, at *14 (E.D. Mich. May 5, 2022); *PVP-Salem Assocs., L.P. v. Parlex Corp.*, No. CIV. 04-CV-386-JD, 2006 WL 488739, at *8 (D.N.H. Feb. 28, 2006) (citing cases). Here, Newmark has adequately pled that PNC failed to maintain the property. (Doc. 12 at 7-8).

In the alternative, PNC maintains that even if Newmark's claim is sufficiently pled, the claim is barred by Section 6 of the original lease. Section 6 is a Waiver of Subrogation clause that releases the parties from, "...[The] loss of, or damage to, property which is caused by… risks… which could be insured under a standard all-risk property insurance policy, regardless of cause, including negligence of either party…" [edited for clarity] (Doc. 12 at 20). However, a standard all-risk policy will include exceptions for damages due to wear and tear and for a failure to maintain. *Meridian Leasing, Inc. v. Associated Aviation Underwriters, Inc.*, 409 F.3d 342, 350 (6th Cir. 2005) ("Wear and tear exclusions have long been a feature of all-risk insurance contracts.").

Therefore, PNC's Motion to Dismiss is DENIED to the extent that seeks to dismiss Newmark's claims for breach of Sections 8.2 and 23 of the lease based on allegations of damage to the interior of the property.

### 3. <u>HVAC</u>

Under Section 8.2 of the original lease, PNC was required to "cause to be performed on a regular basis pursuant to a service contract with a reputable heating ventilating and air conditioning contractor ordinary day to day and preventative maintenance of the heating and air conditioning equipment." (Doc. 12-1 at 7). Newmark alleges that PNC breached this duty and, as a result, there are rusting fasteners and a vibrating motor bearing on the rooftop HVAC units which indicate imminent failure. (Doc. 12 at 8-9).

PNC argues that the allegations made by Newmark are contradictory because Newmark alleges that the HVAC units exhibit signs of imminent failure, but at the same time, Newmark also alleges that the HVAC units required replacement at least three years ago. In addition, PNC argues that under Ohio law, replacement is only required after something is destroyed or no longer usable. PNC points out that Newmark has not alleged that the HVAC units are no longer usable.

At the motion to dismiss stage, a court "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Newmark alleges that PNC failed to perform preventative maintenance as exhibited by the condition of the units. Even if Newmark is not entitled to replacement, it would still be entitled to any monetary damages caused by PNC's alleged failure to perform the contractually required routine maintenance. Therefore, PNC's Motion to Dismiss is DENIED to the extent that seeks to

dismiss Newmark's claims for breach of Section 8.2 of the lease based on PNC's alleged failure to repair, replace or perform preventative maintenance on the HVAC units.

### 4. Modification of the lease

Newmark alleges that around 2020, PNC started independently engaging their preferred contractors to perform work on the exterior of the property that Newmark was obligated to perform under Section 8.1 of the lease. (Doc. 12 at 10).[2] PNC would then forward the invoices to Newmark, who would pay the invoices and seek reimbursement from PNC. (Id.) Newmark alleges that this arrangement lasted until a few months before the expiration of the lease when PNC suddenly ceased performing repairs, replacements and maintenance to the exterior of the building. (Id.)

The Supreme Court of Ohio has recognized modifications of contracts through the course of conduct of the parties, even without a written or oral agreement. *City of St. Marys v. Auglaize Cnty. Bd. of Comm'rs*, 115 Ohio St. 3d 387, 393, 875 N.E.2d 561, 568 (Ohio 2007). Further, courts may look to the course of performance when interpreting a contract after a dispute has arisen between the parties after a period of operation under

---

[2]Section 8.1 of the lease provides:

> Landlord, at its expense subject to reimbursement for those matters set forth in Section 9.1, shall perform all repairs and maintenance and rnake all replacements as are necessary to keep in good order, condition and repair (i) the roof and all structural elements and portions of the Leased Premises and Building, including without limitation walls and floors and foundations; (ii) an exterior elements and portions of the Building; and (iii) the parking areas, drives, loading docks and pads located on or within the Leased Premises or Building, subject however in each case to ordinary wear and tear and damage by fire and other casualty,. [sic] In addition, Landlord shall provide window cleaning, snow removal, lawn care and trash collection services to the Leased Premises. Tenant shall reimburse Landlord for its proportionate share of Landlord's repair, replacement and maintenance costs and other services hereunder in accordance with (and subject to the limitations set forth in) Section 2 below.

(Doc. 12-1 at 7).

11

the contract. *Id*. When looking at the course of performance, "a continued, different 'course of performance' between parties manifests a modification of the original agreement." *Id.* (citing *Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 167 Ohio App.3d 696, 2006 Ohio 3492, 856 N.E.2d 1008 (Ohio Ct. App. 2006)). "Whether a written contract has been modified by a course of dealing is a question of fact for the trier of fact." *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 64 N.E.3d 1034, 1046 (Ohio Ct. App. 2016) (citing *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 971 N.E.2d 967, 973 (Ohio Ct. App. 2012)). Therefore, this determination cannot be made upon a motion to dismiss.

However, PNC maintains that the non-waiver provision of Section 20 of the lease prevents any modification of the lease terms. This provision of the lease states: "No waiver of any condition or covenant of this Lease by either party shall be deemed to imply or constitute a further waiver of the same or any other condition or covenant…" (Doc. 12 at 28). As Newmark points out, the non-waiver provision says nothing about modification or amendment of the lease; and Ohio courts have found that non-waiver provisions themselves can be modified by the parties' course of dealing.

For the first time in their Reply, PNC attempts to reframe Newmark's allegations of modification as a waiver by estoppel. (Doc. 15 at 12). A waiver by estoppel would in theory be subject to the non-waiver provision. However, even if Newmark's allegations are more properly described as a waiver by estoppel, Ohio courts have held that "even nonwaiver clauses may not preclude a trial court from finding a waiver of rights where a party acts in an affirmative manner evincing an intent to waive contractual provisions." *State ex rel. Morrison v. Wiener*, 83 N.E.3d 292, 300 (Ohio Ct. App. 2017) (quoting *Cokor*

12

*v. Borden Chem. Div. of Borden*, No. 54745, 1988 WL 136012, at *4 (Ohio Ct. App. Dec. 15, 1988)). "Whether a party's conduct constituted a waiver generally presents a factual question." *Crutcher v. Oncology/Hematology Care, Inc.*, 201 N.E.3d 446, 454 (Ohio Ct. App. 2022) (citing *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr.*, 156 Ohio App. 3d 65, 93, 804 N.E.2d 979, 1000 (Ohio Ct. App. 2004)). Regardless of whether Newmark has alleged a modification by the parties' course of performance, or a waiver by estoppel by affirmative actions, Newmark's Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, PNC's Motion to Dismiss is DENIED to the extent that seeks to dismiss Newmark's claim for breach of Section 8.1 of the lease.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss (Doc. 13) is **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

                                             */s/ Michael R. Barrett*
                                          JUDGE MICHAEL R. BARRETT