**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

3385 Newmark Drive, LLC,

                Plaintiff,                                Case No.  1:22cv671

        v.                                        Judge Michael R. Barrett

PNC Bank, National Association,

                Defendant

## OPINION & ORDER

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 47) and Plaintiff's Motion for Partial Summary Judgment (Doc. 50).  Also before the Court are Defendant's Motion to Exclude Expert Report, Opinions, and Testimony of Mark Jacoby (Doc. 48) and Motion to Exclude Expert Report, Opinions, and Testimony of Richard Housh (Doc. 49).  These motions have been fully briefed.  (Docs. 55, 56, 57, 58, 59, 61)

## I.    BACKGROUND

Plaintiff, 3385 Newmark Drive, LLC ("Newmark"), owns real property located at 3385 Newmark Drive, Miamisburg, Ohio ("Property").  (Doc. 12, PAGEID 104). Defendant, PNC Bank, National Association ("PNC"), is the former lessee of the Property. (Doc. 12, PAGEID 105).  The original lease was signed in 2004 and was amended four times before expiring on September 30, 2022.  (Docs. 12-1, 12-2, 12-3, 12-4, 12-5) ("Lease").  In September of 2021, PNC informed Newmark that it would not be renewing the Lease.  (Doc. 39, Thomas Byrd Dep., PAGEID 431).  When the Lease ended on

September 30, 2022, PNC vacated the Property.  (Doc. 12, PAGEID 105).  The Property has remained vacant since that time.  (Doc. 40, Mark Sher Dep., PAGEID 833-834).

Newmark brings a breach of contract claim against PNC based on three provisions of the Lease.  The relevant portions of those provisions are as follows:

First, Section 8.2 required PNC to "perform all repairs and maintenance and make all replacement as are necessary to keep in good order, condition and repair, all portions of the interior of the Building."  (Doc. 12-1, PAGEID 122).  This includes "all heating and air conditioning equipment including routine maintenance, repair and replacement," but did not extend to "ordinary wear and tear."  (Doc. 12-1, PAGEID 122).  Section 8.2 further provides that PNC "shall . . . cause to be performed on a regular basis pursuant to a service contract with a reputable heating ventilating and air conditioning contractor ordinary day to day and preventative maintenance of the heating and air conditioning equipment."  (Doc. 12-1, PAGIED 122).  Under Section 8.2 of the Lease, PNC was also responsible for "maintenance of the lawn and landscaping surrounding the Leased Premises in good and sightly condition."  (Doc. 12-3, PAGEID 149).

Next, Section 8.1 required Newmark, as the landlord, "at its expense" to "perform all repairs and maintenance and make all replacements as are necessary to keep in good order, condition, and repair (i) the roof and all structural elements and portions of the Leased Premises and Building . . . and (iii) parking areas . . ."  (Doc. 12-3, PAGEID 149). However, PNC was required to reimburse Newmark for its proportionate share of "Operating Expenses" which included "repairs, replacement and maintenance costs" for the roof and parking areas.  (Id.)  Reimbursement is governed by Sections 9.1 and 9.2 of the Lease, but Newmark does not claim that PNC breached those provisions.

2

Finally, Section 23 required PNC to "surrender to Landlord the Leased Premises in good condition and repair, ordinary wear and tear, action by the elements, fire, other casualty, condemnation or appropriation excepted."  (Doc. 12-1, PAGEID 129).

In its Motion for Partial Summary Judgment, Newmark maintains that it is entitled to judgment on its breach of contract claim based on the landscaping requirement, HVAC replacement and roof replacement; but to the extent that its claim is based on repairs to the parking lot and interior building damage, there are genuine issues of material fact which should be set for trial.  In its Motion for Summary Judgment, PNC maintains that there no dispute as to any material fact, and it is entitled to judgment as a matter of law on Newmark's breach of contract claim.

## II.    ANALYSIS

### A.    Standard of review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  In deciding whether this burden has been met by the movant, this Court views the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

This standard of review remains the same for reviewing cross-motions for summary judgment.  *Ohio State Univ. v. Redbubble, Inc*., 989 F.3d 435, 441-42 (6th Cir. 2021) (citing *United States S.E.C. v. Sierra Brokerage Servs., Inc*., 712 F.3d 321, 327

(6th Cir. 2013); *see also Harris v. City of Saginaw, Michigan*, No. 22-1504, 2023 WL 2569495, at *3 (6th Cir. Mar. 20, 2023) ("The district court correctly emphasized the hat switch courts perform when evaluating cross motions for summary judgment: In review of the *defendant's* motion, we accept the *plaintiff's* view of the facts as true and draw all reasonable inferences in favor of the *plaintiff*; in review of the *plaintiff's* motion, we accept the *defendant's* view of the facts as true and draw all reasonable inferences in favor of the *defendant*.") (emphasis in original).

## B. <u>Breach of contract</u>

The parties agree that Ohio law governs Newmark's breach of contract claim. Under Ohio law, "leases are contracts and, as such, are subject to traditional rules governing contract interpretation." *Plaza Dev. Co. v. W. Cooper Ents., L.L.C.*, 12 N.E.3d 506, 512 (Ohio Ct. App. 2014) (quoting *Heritage Court L.L.C. v. Merritt*, 187 Ohio App.3d 117, 931 N.E.2d 194 (Ohio Ct. App. 2010)). Under these rules, "contract interpretation is a matter of law when a contract's terms are clear and unambiguous." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Long Beach Ass'n, Inc. v. Jones*, 82 Ohio St.3d 574, 697 N.E.2d 208, 209-210 (1998)). "Contractual language is ambiguous 'only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (quoting *Covington v. Lucia*, 151 Ohio App.3d 409, 784 N.E.2d 186, 190 (2003)) (additional citations omitted). "'[C]ourts should examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.'" *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 361 (6th Cir. 2014) (quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129

Ohio St.3d 397, 953 N.E.2d 285, 292 (Ohio 2011)).  Additionally, courts should "look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement." *Id.*[1]

The Court now turns to the specifics of Newmark's breach of contract claim.

### 1. Landscaping

Newmark claims that PNC breached Section 8.2 of the Lease by failing to maintain the landscaping "in good and sightly condition."  Newmark relies on three pieces of evidence in the record.

The first is an entry in PNC's property management system made by PNC's property manager, Amber Apple, one week before PNC surrendered the Property:

> Send to Madison [Tree Care and Landscaping] – Please do a landscape cleanup prior to Tuesday 9/20. We are vacating this building and the landscape continues to look awful. The only thing being done is mowing and it appears they sprayed the weeds in the lot islands. There are a lot of weeds in the beds around the building. Bushes need trimmed back and any dead plants/bushes/trees need to be removed and replaced. If you look at the surrounding businesses landscape it looks like this building has been abandoned for awhile.

(Doc. 38, Amber Apple Dep., PAGEID 358).

---

[1]Newmark argues that Ohio courts construe provisions in a long-term lease more broadly and in favor of the landlord.  While the length of the lease is one factor in interpreting leases which impose the duty to repair on the lessee, this does not amount to a rule of contract interpretation.  *See Statler Arms, Inc. v. APCOA, Inc.*, 92 Ohio Misc. 2d 45, 60, 700 N.E.2d 415, 425 (Ohio Com. Pl. 1997) ("The court could conceive of a situation in which the phrase 'repairs, replacements and renewals' is interpreted differently than in the Statler lease, due to the other factors that must be considered, such as the balance of the language of the repair covenant in the lease, the reading of the lease as a whole, the length of the lease, the condition of the premises at the commencement of the lease, to name a few. Therefore, it cannot be stated, as a matter of law, that the use of the term 'repair' or 'repairs, replacements and renewals' always includes or always excludes substantial or structural repairs.").

The second is an August 13, 2021 "Notice of Warning" issued by Miami Township stating that the Property was in violation of the Miami Township Property Maintenance Code for uncut vegetation around the Property.  (Doc. 50-34, PAGEID 1737).

The third is the estimate prepared by Mark Jacoby, a property inspector, which states that the cost to remediate the landscaping is $6,338.59. (Doc. 50-2, PAGEID 1565).

PNC responds that this evidence cannot support a breach of contract claim.  PNC explains that the entry in their property management system only shows that they were preparing to return the property to Newmark.  PNC argues that there is no evidence of the condition of the landscaping when the lease ended in September of 2022 because Newmark did not conduct a final walkthrough and Jacoby's inspection did not occur until two years later in September of 2024.

The Court concludes that there is a genuine issue of material fact as to whether PNC maintained the landscaping on the Property "in good and sightly condition."  While Miami Township issued a Notice of Warning in 2021, the violation appears to be based on the "grass and weeds to the rear of the property, surrounding parking lots and within parking lot islands."  From this description and the photos attached to the Notice of Warning, the Court cannot find as a matter of law that PNC failed to keep the landscaping in a "good and sightly condition."[2]

---

[2]Moreover, there is nothing in the record which would indicate that Newmark complained about the condition of the landscaping or took advantage of the following provision in the Lease: "if Tenant elects not to undertake such responsibilities, or if Tenant fails to undertake such responsibilities after thirty (30) days notice from Landlord, then Landlord may undertake such responsibilities and same shall be included within Operating Expenses payable by Tenant." (Doc. 12-3, PAGEID 149).

Therefore, neither party is entitled to summary judgment on Newmark's breach of contract claim based on the landscaping requirement in Section 8.2 of the Lease.

### 2.  HVAC

There is no dispute that PNC fulfilled its duty under Section 8.2 of the Lease to "cause to be performed on a regular basis pursuant to a service contract with a reputable heating ventilating and air conditioning contractor ordinary day to day and preventative maintenance of the heating and air conditioning equipment."  Instead, Newmark claims that under Section 8.2 PNC was also responsible for "all heating and air conditioning equipment including routine maintenance, repair and replacement;" and because PNC failed to replace the rooftop HVAC units at the Property, PNC breached the terms of the Lease.

Newmark explains that the rooftop HVAC units were all manufactured in 2004 and are expected to have a life of 15 years, which may be extended to 16 or 17 years with regular maintenance.  Newmark points out that PNC replaced of one the units in 2019, which demonstrates the other thirteen units are in danger of imminent failure and will require emergency replacement in the near future.  PNC responds that the HVAC units were in good condition and fully functional in September 2022 when PNC vacated the Property.

The Court concludes that there is a genuine issue of material fact regarding whether or not the HVAC units needed to be replaced before the expiration of the Lease. While Newmark explains the units have an average life expectancy, Newmark's corporate representative recognized that replacement of an HVAC unit is "dependent on the condition of the unit."  (Doc. 40, Mark Sher Dep., PAGEID 725).

Moreover, "Ohio courts are hesitant to read a duty to replace into a covenant to repair." *Abbe Rd. Realty, LLC v. Kuehne & Nagel, Inc*., No. 1:14 CV 2463, 2017 WL 10858881, at *8 (N.D. Ohio July 10, 2017) (citing *Call v. Lavati Chevrolet-Buick, Inc*., No. 3-91-36, 1992 WL 81425, at *1, *4 (Ohio Ct. App. April 23, 1992).  "In the limited cases in which Ohio courts are willing to read into a lease a duty to replace, courts consider the lease's language, reading the document as a whole, with several surrounding circumstances, including: (1) which party drafted the lease; (2) the condition of the premises at the commencement of the lease; (3) the length of the lease's term; and (4) whether the lessee caused a need to perform the alterations."  *Id*. at *9 (citing *Brown v. Spitzer*, 910 N.E.2d 490, 499–503 (Ohio Ct. App. 2009); *Statler Arms, Inc. v. APCOA, Inc*., 700 N.E.2d 415, at 424–25, 427–28 (Ohio Ct. Com. Pl. 1997); *Mach v. Accettola*, 112 Ohio App. 3d 282, 286–90 (Ohio Ct. App. 1996)).

Here, there is no evidence of who drafted the lease in the record.  Presumably, the HVAC units were new when the parties entered into the original Lease Agreement in 2004, which is the same year of their manufacture.  However, even if the average useful life of the HVAC units is fifteen years, the term of the First Lease Agreement was ten years.  (Doc. 12-1, PAGEID 118).  That term was shortened to five years in 2016, when the parties signed the Fourth Amendment to the Lease Agreement.  (Doc. 12-5, PAGEID 155).  As courts have recognized, it "would be inequitable to require [the lessees] to pay the cost of the replacement when the useful life of the [item] would likely extend beyond the end of the lease term."  *Abbe Rd. Realty, LLC v. Kuehne & Nagle, Inc*., No. 1:14 CV 2463, 2016 WL 11558219, at *9 (N.D. Ohio Sept. 22, 2016) (quoting *Mach*, 112 Ohio App. 3d at 289).  Therefore, this factor weighs in favor in finding that there was no duty to

replace the HVAC units. As to the fourth factor, there is no evidence that PNC caused a need to perform the alterations. Instead, there is undisputed evidence that PNC fulfilled its duty of causing "to be performed on a regular basis pursuant to a service contract with a reputable heating ventilating and air conditioning contractor ordinary day to day and preventative maintenance of the heating and air conditioning equipment."

Therefore, neither party is entitled to summary judgment on Newmark's breach of contract claim based on the HVAC replacement language found in Section 8.2 of the Lease.

### 3. Roof and parking lot

Both parties have moved for summary judgment on Newmark's claim that PNC's failure to maintain the roof is a breach of contract. In addition, PNC seeks summary judgment on Newmark's breach of contract claim based on the condition of the parking lot.

PNC argues that under Section 8.1 of the Lease, Newmark was responsible for repairing the roof and parking lot. Newmark disagrees and argues that PNC assumed Newmark's obligation to make roof repairs when it used its own vendors to perform work on the roof and the parking lot. Therefore, according to Newmark, PNC is responsible for the cost of replacing the roof and the parking lot repairs.

PNC acknowledges it contacted approved vendors and made arrangements for the roof and parking lot to be repaired. However, according to PNC, any action it took with regard to the parking lot and the roof was because Newmark failed to respond to PNC's request for repairs. PNC explains that after the repairs were made, it would submit the invoices from the repairs to Newmark, who pursuant to Section 9 of the Lease, could

seek reimbursement from PNC for its share of these "Operating Expenses." (Doc. 12-1, PAGEID 123).

Newmark argues that this arrangement demonstrates a modification of the Lease which shifted the responsibility of the parking lot repairs and roof replacement to PNC. PNC disagrees and argues that regardless, roof replacement is a "capital improvement" which is specifically excluded from "Operating Expenses" under Section 9.1 of the Lease.

As this Court previously explained when it ruled on PNC's Motion to Dismiss: "Whether a written contract has been modified by a course of dealing is a question of fact for the trier of fact." *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 64 N.E.3d 1034, 1046 (Ohio Ct. App. 2016) (citing *Westgate Ford Truck Sales, Inc. v. Ford Motor Co.*, 971 N.E.2d 967, 973 (Ohio Ct. App. 2012)). Similarly, "[w]hether [ ] work is a repair or an improvement is normally a factual question." *Abbe Rd. Realty, LLC v. Kuehne & Nagle, Inc.*, No. 1:14 CV 2463, 2016 WL 11558219, at *11 (N.D. Ohio Sept. 22, 2016) (quoting *Riverside Builders v. Bowers*, No. 89AP-834, 1990 WL 75433 at *6 (Ohio Ct. App. June 7, 1990)).

Therefore, neither party is entitled to summary judgment on Newmark's breach of contract claim based on the condition of the roof or parking lot of the Property.

### 4. Interior

PNC maintains that it is entitled to summary judgment on Newmark's breach of contract claim based on the interior of the Property. PNC explains that the photos Newmark has presented from February of 2022 do not reflect the improvements PNC made before surrendering the Property in September of 2022. PNC explains that other

photos Newmark relies upon were taken after the Property sat vacant and unmaintained for two years.

Under Ohio law, "[t]he usual and ordinary meaning ascribed to the phrase 'wear and tear' is that deterioration of condition or depreciation in value attributable to normal and reasonable use of an object. What is normal and reasonable use depends upon the service for which the object is intended." *Ohio Environmental Development Ltd. Partnership v. Envirotest Sys. Corp.*, 478 F.Supp.2d 963, 970 (N.D. Ohio 2007).  As this Court previously explained when it ruled on PNC's Motion to Dismiss: The determination of whether damage to a leased property is "ordinary wear and tear" or something more is a question of fact. *See Brant v. Benedict Enters., Inc.*, Nos. C-890196, C-890216, 1990 WL 103750, at *6 (Ohio Ct. App. July 25, 1990); *see also Atlas Oil Co. v. Extreme Petro. Servs. Co.*, No. 20-cv-10877, 2022 WL 1431047, at *14 (E.D. Mich. May 5, 2022); *PVP-Salem Assocs., L.P. v. Parlex Corp.*, No. CIV. 04-CV-386-JD, 2006 WL 488739, at *8 (D.N.H. Feb. 28, 2006) (citing cases).

Therefore, PNC is not entitled to summary judgment on Newmark's breach of contract claim based on the condition of the interior of the Property.

III.   <u>**CONCLUSION**</u>

Based on the foregoing, Defendant's Motion for Summary Judgment (Doc. 47) and Plaintiff's Motion for Partial Summary Judgment (Doc. 50) are **DENIED**.  Because the Court reaches this decision without reliance on Plaintiff's expert reports, Defendant's Motion to Exclude Expert Report, Opinions, and Testimony of Mark Jacoby (Doc. 48) and Motion to Exclude Expert Report, Opinions, and Testimony of Richard Housh (Doc. 49) are **DENIED as MOOT**.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
JUDGE MICHAEL R. BARRETT